MEMORANDUM OPINION




No. 04-03-00901-CR



Albert BARRERA,


Appellant



v.



The STATE of Texas,


Appellee



From the 186th Judicial District Court, Bexar County, Texas


Trial Court No. 2002-CR-5803


Honorable Maria Teresa Herr, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: November 3, 2004


AFFIRMED

 Albert Barrera ("Barrera") was found guilty of murder by a jury and sentenced to forty-five
years imprisonment. On appeal, he argues that the trial court erred (1) by overruling his motion for
mistrial, (2) by admitting into evidence four photographs of the victim at the crime scene, (3) by
denying his motion for directed verdict, (4) by failing to charge the jury on the lesser included offense
of criminally negligent homicide, and (5) by overruling his motion for new trial. We affirm the
judgment of the trial court.

Background

 On the evening of June 15, 2002, the Lopez family held a backyard barbecue at their home.
Barrera, who lived a few houses away from the Lopez family, and Christopher Lozano ("Lozano")
had been drinking at a friend's house. When they arrived at Barrera's home, they parked at the curb
and remained at the car, listening to music.

 Meanwhile, Luis Felan ("Felan") and Luiz Lopez Martinez ("Martinez") left to visit a friend
who lived four or five houses away. The men passed Barrera and Lozano. Shortly after Felan and
Martinez passed, Barrera entered his home and returned to the car with a chrome .40 caliber pistol.
Barrera demonstrated the safety feature of the pistol to Lozano, telling him that Lozano could use
the pistol whenever he liked. Lozano testified that Barrera was pulling the trigger of the pistol with
the safety engaged. This made Lozano nervous because he knew the pistol was loaded.

 Later, Martinez's brother-in-law went to the friend's home, where Felan and Martinez had
gone. When the group passed Barrera and Lozano on their return trip to the Lopez home, comments
were exchanged between the men. The situation was tense, but was diffused when Felan invited
Barrera and Lozano to the barbecue. Before going to the Lopez home, Barrera and Lozano went
inside Barrera's house, where Lozano left the chrome pistol on the VCR. Barrera went to his
bedroom and returned with another pistol stuck in his waistband.

 While the group drank beer at the Lopez home, Barrera began cursing loudly. A scuffle broke
out when Barrera was asked not to curse, and Barrera was pushed into a chair. Barrera and Lozano
left the Lopez home. Felan and Martinez followed, attempting to calm the situation. Barrera drew
his pistol and fired at Felan, shooting him through the heart. Martinez turned to run away and was
hit by a bullet that perforated his lung.

 Barrera was convicted by a jury of murder.

Motion for Mistrial

 In his first issue, Barrera contends that the trial court erroneously denied his motion for
mistrial after sustaining his objection to testimony concerning an extraneous offense. During the
State's direct examination of Detective Robert Blanton, the prosecutor asked: "Did you include in
your report the facts surrounding the interview you had with [the defendant]?" Detective Blanton
answered: "I did address it in my report. Yes, sir. He - the actor refused to give me any information
about where he was at, for the most part, during the time of the shooting. He did state that he had
previously shot someone who was trying to enter his residence." Barrera objected that Detective
Blanton's answer referred to an inadmissible extraneous offense. The trial court sustained the
objection and instructed the jury to disregard the testimony. Barrera's subsequent motion for mistrial
was denied.

 A prompt instruction to disregard will ordinarily cure error associated with testimony of an
extraneous offense, unless the evidence was clearly calculated to inflame the jury or it "is of such
damning character as to suggest it would be impossible to remove the harmful impression from the
jury's mind." Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); Kemp v. State, 846
S.W.2d 289, 308 (Tex. Crim. App. 1992). There is nothing in the record to suggest that the answer
given by Detective Blanton could not be cured. The uninvited reference to Barrera's extraneous
offense was not so inflammatory as to undermine the effectiveness of the trial court's instruction to
disregard. The trial court did not err in denying Barrera's motion for mistrial.

Admissibility of Photographs

 In his second issue, Barrera asserts that the trial court erred in admitting into evidence four
photographs of the victim at the crime scene. Barrera argues that the photographs were cumulative
and inflammatory. Further, Barrera contends that the prejudicial nature of the photographs greatly
outweighed their probative value and that their admittance was an abuse of the trial court's discretion.

 The Texas Rules of Evidence provide that though relevant, evidence may be excluded if "its
probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,
misleading the jury, or by considerations of undue delay or needless presentation of cumulative
evidence." Tex. R. Evid. 403. Rule 403 carries with it a presumption that relevant evidence is more
probative than prejudicial. Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996); Legate v.
State, 52 S.W.3d 797, 807 (Tex. App.-San Antonio 2001, pet. ref'd). Therefore, before Rule 403
requires exclusion, there must be a marked distinction between the evidence's probative value and
any danger of unfair prejudice. Several factors may be considered in determining whether the danger
of unfair prejudice substantially outweighs the probative value of photographs, including the number
of photographs offered, their detail, their size, whether they are black and white or color, whether
they are close up, and the availability of other means of proof and the circumstances unique to each
individual case. Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). Ultimately, the
admissibility of the challenged photographs is within the sound discretion of the trial court. Hayes
v. State, 85 S.W.3d 8009, 815 (Tex. Crim. App. 2003); Sonnier, 913 S.W.2d at 519. 

 The four photographs of which Barrera complains depict the victim's body as it was found
at the crime scene. The photographs were taken from different perspectives and show the victim in
relation to other evidence collected at the scene. Exhibit 25 is a picture of the victim from his left,
exhibit 26 shows the victim from his feet, and exhibit 27 is a picture of the victim from his right.
Finally, exhibit 30 shows where the bullet passed through the victim's clothing. While the
photographs may have been of the same subject matter - the victim - they were distinct, and therefore
not cumulative.

 Photographs are generally admissible if verbal testimony concerning the subject matter of the
photograph is also admissible. Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).
Nothing was depicted in the photographs which also was not included in the testimony of various
witnesses. Barrera argues that the photographs offered no additional descriptive insight into the
nature of the victim's wounds, which were fully described at trial. Additionally, Barrera argues that
the nature of the offense was revealed long before the photographs were offered into evidence and
that exclusion of the photographs would not have disadvantaged the State. The crux of Barrera's
argument seems to be that because the photographs merely corroborated the testimony of various
witnesses and communicated uncontested information, their inflammatory nature far outweighed their
probative value.

 The Court of Criminal Appeals has rejected "the premise that visual evidence accompanying
oral testimony is cumulative of that testimony or that it is of insignificant probative value."
Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). Visual evidence accompanying
witness testimony is persuasive and often provides the fact finder with a point of comparison against
which to gauge witness credibility and the validity of a witness's conclusions. Id. Although the
photographs may be disturbing, they depict nothing more than the reality of the crime committed.
The trial court did not err in admitting the four photographs.

Sufficiency

 In his third and fifth issues, Barrera asserts that the trial court erred in denying his motions
for directed verdict and new trial because the evidence was insufficient to justify or sustain his
conviction. To determine the legal sufficiency of the evidence to support a conviction, we view all
the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318-19 (1979). For a factual sufficiency review, we look at all the evidence to determine
whether it is so weak as to make the verdict clearly wrong and manifestly unjust or whether the
adverse finding is against the great weight and preponderance of the available evidence. Sims v.
State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

 The only element of the offense Barrera disputes is whether he intentionally killed the victim.
A person commits the offense of murder if he "intentionally or knowingly causes the death of an
individual" or if he "intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of an individual." Tex. Pen. Code Ann. § 19.02(a), (b) (Vernon
2003). Barrera was charged under each of these theories; therefore, the jury was permitted to find
Barrera guilty on less than specific intent to murder.

 Viewed in the light most favorable to the verdict, the evidence shows that Barrera carried and
used a .45 caliber pistol. The jury may infer the intent to kill from the use of a deadly weapon unless
it would not be reasonable to infer that death or serious bodily injury could result from the use of the
weapon. Godsey v. State, 719 S.W.2d 578, 581-82 (Tex. Crim. App. 1986). A firearm is defined
as a deadly weapon. Tex. Pen. Code Ann. § 1.07(a)(17)(A) (Vernon 2003). A pistol is not a
deadly weapon per se. Boyett v. State, 692 S.W.2d 512, 517 (Tex. Crim. App. 1985). However, in
the instant case, the evidence shows the pistol was a deadly weapon in the manner of its use. Tex.
Pen. Code Ann. § 1.07(a)(17)(B) (Vernon 2003). Barrera pulled the pistol from his waistband,
pointed it at Felan, and pulled the trigger, shooting Felan through the heart. Further, after Barrera
shot Felan, he continued shooting and wounded Martinez.

 In his brief, Barrera does not set forth any evidence to support his contention that he did not
intentionally shoot the victim. A review of the record for evidence supporting the verdict reveals the
following: (1) testimony from Lozano that Barrera pulled out a pistol and fired it; (2) testimony from
Martinez that Barrera pulled out a pistol and shot Felan; and (3) testimony from both David Guerrero
and Yolanda Lopez that they saw Barrera fire a pistol. Evidence opposing the verdict includes: (1)
a gunshot residue test could not conclusively determine whether Barrera had fired a gun; and (2) no
legible fingerprints were found on the pistol determined to be the weapon used to shoot Felan. (1) Due
deference must be accorded to the jury regarding the weight and credibility of evidence. Martinez v.
State, 129 S.W.3d 101, 106 (Tex. Crim. App. 2004). Deferring to the jury's assessment of weight
and credibility, we see no reason to conclude that the jury's verdict is manifestly unjust, shocks the
conscience or clearly demonstrates bias and a rational jury could have found beyond a reasonable
doubt that Barrera intentionally caused the death of Felan. Therefore, we find the evidence both
legally and factually sufficient, and the trial court did not err in denying Barrera's motions for directed
verdict and new trial.



Lesser Included Offense

 Barrera asserts in his fourth issue that the trial court erred when it denied his requested jury
charge on the lesser included offense of criminally negligent homicide. Barrera was charged with
murder. Tex. Pen. Code Ann. § 19.02 (Vernon 2003). Barrera requested that the trial court also
submit the offense of criminally negligent homicide. The trial court denied his request.

 A jury instruction on a lesser included offense is required only if the lesser offense is included
within the proof necessary to establish the offense charged and some evidence exists in the record that
if the defendant is guilty, he is guilty of only the lesser included offense. Rosseau v. State, 855
S.W.2d 666, 672 (Tex. Crim. App. 1993). Criminally negligent homicide is a lesser included offense
of murder. Tex. Crim. Proc. Code Ann. art. 37.09 (Vernon 1981); Thomas v. State, 699 S.W.2d
845, 847 (Tex. Crim. App. 1985); Martinez v. State, 87 S.W.3d 663, 665 (Tex. App. -San Antonio
2002). To address the merits of Barrera's assertion, we must determine if there is some evidence on
the record that would allow a rational jury to find that if Barrera is guilty, he is guilty of criminally
negligent homicide only. Rousseau, 855 S.W.2d at 672. 

 An individual commits criminally negligent homicide "if he causes the death of an individual
by criminal negligence." Tex. Pen. Code Ann. § 19.05 (Vernon 2003). A person acts with criminal
negligence when he ought to be aware of a substantial and unjustifiable risk. Tex. Pen. Code Ann.
§ 6.03(d) (Vernon 2003). That risk must be such that the failure to perceive it constitutes a gross
deviation from the standard of care that an ordinary person would exercise under the circumstances
viewed from the actor's viewpoint. Id. Therefore, before a charge on criminally negligent homicide
is proper, the record must contain evidence showing that the defendant was unaware of the risk or
that he failed to perceive the risk created by his conduct. Mendieta v. State, 706 S.W.2d 651, 653
(Tex. Crim. App. 1986); Thomas, 699 S.W.2d at 849.

 Barrera contends that witness testimony provides evidence sufficient to warrant a charge for
the lesser included offense. Barrera argues that "everyone was drinking" and "bullets were literally
flying," and contends that this requires an instruction on criminally negligent homicide. Evidence that
a defendant is familiar with guns and their potential for injury, and that he points a gun at another,
indicates a person who is aware of a risk created by that conduct and disregards the risk. Thomas,
699 S.W.2d at 850. Witness testimony that earlier in the evening Barrera demonstrated the safety
features of a handgun shows that Barrera was familiar with both handguns and their potential for
injury. Evidence indicated that Barrera was aware of the possibility of injury or death associated with
exhibiting a loaded gun. Therefore, the trial testimony does not show that Barrera possessed the
requisite mental state so that if found guilty, he was guilty only of criminally negligent homicide. The
trial court did not err in refusing to give Barrera's requested charge on criminally negligent homicide.

Conclusion

 The judgment of the trial court is affirmed.


 Alma L. Lopez, Chief Justice


Do not publish
1. We note, however, that further testimony at trial indicated that sweating or rummaging around in the dirt
can affect the ability of a gunshot residue test to determine if a person recently fired a gun, and Barrera was found by
the police hiding in a large field. Furthermore, the inconclusiveness of the fingerprint tests would not preclude a
finding that Barrera was the shooter.